# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

ERIC BIVENS,

    Plaintiff,

v.

COFFEE COUNTY, DOYLE WOOTEN,
OSCAR WILSON, and JASON CAULEY,

    Defendants.

No. 5:21-CV-14

**ORDER**

Before the Court is the motion to dismiss filed by Defendants Coffee County and Doyle Wooten.  Dkt. No. 12.  For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

**BACKGROUND**[1]

This case arises from the arrest and jailing of Plaintiff Eric Bivens ("Plaintiff") by the Coffee County Sheriff's Office. See Dkt. No. 1.  On June 26, 2020, Coffee County Sheriff's deputies, including Defendant Oscar Wilson ("Sergeant Wilson"), came to Plaintiff's home to arrest Plaintiff on a warrant for an unspecified "minor criminal charge."  Id. ¶¶ 7, 8, 24.  Plaintiff

---

[1] For the purposes of ruling on Defendants' Motion to Dismiss, the Court takes Plaintiff's version of the facts as true. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) ("[W]hen ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.").

was peaceable and complied with the deputies as he was taken into custody.[2]  Id. ¶¶ 9, 10, 24.  Upon Plaintiff's arrival at the Coffee County Jail, Defendant Jason[3] Cauley ("Deputy Cauley") booked Plaintiff into the jail. Id. ¶¶ 2, 25.  Plaintiff alleges that Sergeant Wilson and Deputy Cauley treated Plaintiff "extremely abrasively" by verbally berating Plaintiff during the booking process.  Id. ¶¶ 26, 27.  Sergeant Wilson became "physically aggressive" while searching Plaintiff by kicking Plaintiff's legs wider apart and not giving Plaintiff adequate time to comply with commands.  Id. ¶¶ 28, 29.  A non-defendant jail employee named Alexis[4] Scott-Brown "joined in [Plaintiff]'s mistreatment" by encouraging Sergeant Wilson and Deputy Cauley to place Plaintiff alone in a segregated cell, and Sergeant Wilson and Deputy Cauley eventually did so.  Id. ¶¶ 30-32.

After about four hours in the segregated cell, Plaintiff "began to feel weak" and told the deputies he needed some food. Id. ¶¶ 33, 34.  Sergeant Wilson "threatened" Plaintiff in response

---

[2] Plaintiff also alleges that he "expressed reservations" about being exposed to Covid-19 at the jail and includes thirteen paragraphs explaining why these fears were "well-founded." See Dkt. No. 1 ¶¶ 9-23.  This seems to be relevant only as it relates to Plaintiff's allegation that the subsequent use of pepper spray on him and failure to provide medical care afterwards was "alarming given the ongoing COVID-19 pandemic." Id. ¶¶ 46, 47.

[3] Plaintiff refers to Deputy Cauley as "Deputy Oscar Cauley" at one point, dkt. no. 1 ¶ 25, but this seems to be a typo; Deputy Cauley's first name is Jason in the case heading and on the first page of the complaint. See id. at 1.

[4] Plaintiff also refers to this person as "Amanda Scott-Brown" later in the complaint; it is unclear whether this person's name is Alexis or Amanda. Id. ¶¶ 31, 48, 52.

2

to these complaints. Id. ¶ 35. Sergeant Wilson then approached Plaintiff's cell, opened the metal flap of Plaintiff's cell door, and began to pepper spray Plaintiff. Id. ¶¶ 36-37. While Sergeant Wilson continued to pepper spray Plaintiff through the metal flap, Plaintiff huddled in the corner of his cell. Id. ¶ 38. Plaintiff claims Sergeant Wilson knew Plaintiff had asthma. Id. ¶ 45. Deputy Cauley witnessed the pepper spraying but took no action to intervene. Id. ¶ 40. Neither Sergeant Wilson nor Deputy Cauley offered Plaintiff medical assistance or an opportunity to shower, rinse his eyes, or change his clothing afterwards. Id. ¶¶ 41-42. Plaintiff was left in his contaminated cell until he was released the following day. Id. ¶ 43. As a result of the pepper spraying, Plaintiff claims to have suffered "extreme pain, vision problems, vomiting, nightmares, and headaches." Id. ¶ 44.

Plaintiff thereafter filed complaints against Sergeant Wilson, Deputy Cauley, and Scott-Brown at the Coffee County Sheriff's Office,[5] after which the Georgia Bureau of Investigation (the "GBI") opened an investigation into Sergeant Wilson's use of force against Plaintiff. Id. ¶¶ 48-54. The GBI ultimately concluded Sergeant Wilson's use of force was not justified, which resulted in Sergeant Wilson's being terminated by the Sheriff's

---

[5] Plaintiff claims the Coffee County jail employees interfered with Plaintiff's filing these complaints and, in particular, non-defendant Mark Smith "mishandled and/or destroyed the original complaints without filing them" such that Plaintiff had to re-file his complaints. Id. ¶¶ 49-52.

3

Office and criminally charged for this use of force. Id. ¶¶ 55-57. Deputy Cauley was not criminally charged, nor was he punished or terminated by the Sheriff's Office. Id. ¶¶ 58-59. Plaintiff does not allege whether any action was taken against Scott-Brown.

Plaintiff claims the Coffee County Sheriff's Office "has a long history of abusing its power against those that it exists to protect" and enumerates one incident as an example. Id. ¶¶ 60-62. This incident occurred on July 10, 2014, when a Coffee County Sheriff's deputy accidentally shot a ten-year-old child while attempting to arrest an adult suspect. Id. ¶¶ 62, 68-69. Plaintiff alleges the Sheriff's Office defended this deputy and never fired him. Id. ¶ 70. Plaintiff also claims there is a "long and widespread history of sheriff's deputies and private medical contractors at the Coffee County Jail acting with deliberate indifference to the medical needs of those in their care and custody," enumerating four prior incidents as examples. Id. ¶¶ 71-95.

On February 9, 2021, Plaintiff filed this action against four Defendants: Coffee County; the Coffee County Sheriff, Doyle Wooten ("Sheriff Wooten"); Sergeant Wilson; and Deputy Cauley. Id. at 1. Plaintiff asserts five claims in total: excessive force in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against Sergeant Wilson and Deputy Cauley ("Count One"); assault and battery against Sergeant Wilson ("Count Two");

4

deliberate indifference to serious medical needs in violation of the Fourteenth Amendment under section 1983 against Sergeant Wilson and Deputy Cauley ("Count Three"); supervisory liability for constitutional violations under section 1983 against Sheriff Wooten ("Count Four"); and municipal liability for constitutional violations under section 1983 against Coffee County and Sheriff Wooten ("Count Five").  Id. at 17–25.

On March 19, 2021, Defendants Coffee County and Sheriff Wooten filed the subject motion to dismiss Counts Four and Five.  Dkt. No. 12.  The same day, Defendants Coffee County and Sheriff Wooten filed a motion to stay pending resolution of the criminal proceedings against Sergeant Wilson; Defendant Sergeant Wilson filed a similar motion to stay shortly thereafter.  Dkt. Nos. 14, 16.  The Magistrate Judge granted the motions to stay in part, staying the case pending resolution of the motion to dismiss but declining to rule on whether the case should be stayed pending resolution of the criminal proceedings.  Dkt. No. 22 at 1–2.  The Court held oral argument on the subject motion to dismiss on July 21, 2021.  Dkt. No. 28.  The motion has been fully briefed and is now ripe for review.  Dkt. Nos. 18, 21.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading

standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

Lastly, the Court notes that exhibits attached to pleadings become part of a pleading. Fed. R. Civ. P. 10(c). Consequently, a court may consider documents attached to a complaint as exhibits

6

in resolving a motion to dismiss without converting the motion to one for summary judgment. Taylor v. Appleton, 30 F.3d 1365, 1368 n.3 (11th Cir. 1994)

## DISCUSSION

In their motion, Defendants Coffee County and Sheriff Wooten (collectively, "Defendants") argue the claims against them should be dismissed for five reasons: first, Plaintiff's complaint is a shotgun pleading; second, Coffee County is not liable for the Sheriff's actions; third, Sheriff Wooten is entitled to Eleventh Amendment immunity in his official capacity; fourth, Sheriff Wooten has no liability in his individual capacity; and fifth, Sheriff Wooten is entitled to qualified immunity. Dkt. No. 12 at 5–15.

### I. Shotgun Pleading

Defendants first argue that Plaintiff's complaint is a "shotgun pleading" which should be either dismissed or recast. Dkt. No. 12 at 7. Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Complaints that violate either or both of these rules are often referred to as "shotgun pleadings," for which courts in the Eleventh Circuit have "little tolerance." Weiland

7

v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015); Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018).

The Eleventh Circuit has identified four general categories of shotgun pleadings: first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; second is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; third is one that does "not separat[e] into a different count each cause of action or claim for relief"; and fourth is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland, 792 F.3d at 1321–22.

Defendants argue Plaintiff's complaint is guilty of the first two types of shotgun pleading prohibitions because each count of the complaint incorporates all 103 factual allegations and the complaint is replete with conclusory, vague, and immaterial facts. Dkt. No. 12 at 5–7.

As to the first type of shotgun pleading, the Eleventh Circuit has rejected the same argument Defendants now make by explaining that where "[t]he allegations of each count are not rolled into

every successive count on down the line," the complaint does not run afoul of this prohibition. Weiland, 792 F.3d at 1324. Here, Plaintiff incorporates paragraphs 1 through 103 (all of which include factual allegations *prior* to Plaintiff's claims for relief) into each of his five counts, but he does not incorporate the allegations of preceding counts into each successive count; this places his complaint outside the first category of shotgun pleadings. See Dkt. No. 1 ¶¶ 104, 123, 133, 145, 161.

As to the second type of shotgun pleading, Plaintiff's complaint is not "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" such that it should be dismissed. Weiland, 792 F.3d at 1322. Defendants fault Plaintiff for citing to various newspaper articles without showing these articles "contain factual proof of any past constitutional violations," dkt. no. 12 at 7, but as Plaintiff points out, these allegations "are obviously connected to Plaintiff's municipal and supervisory liability claims" as is made clear by Plaintiff's inclusion of these allegations in a section titled "The Coffee County Sheriff's Office's Custom and Policy of Violating Inmates' Constitutional Rights." Dkt. No. 18 at 3-4 (citing Dkt. No. 1 at 9).

"More importantly, this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual

9

allegations underlying each count." Weiland, 792 F.3d at 1324. Defendants clearly understand the claims against them and which facts underpin those claims, as is demonstrated by the remaining arguments in their motion to dismiss. See Dkt. No. 12 at 7–18. Plaintiff's complaint is not a shotgun pleading and shall not be dismissed on that basis.

**II.   Defendant Coffee County**

Defendants next argue that Coffee County is entitled to dismissal because the County is not responsible for the Sheriff's actions. Dkt. No. 12 at 8. In Georgia, "a county has no authority and control over the sheriff's law enforcement function" and thus cannot be held liable for such conduct. Grech v. Clayton Cnty., 335 F.3d 1326, 1347 (11th Cir. 2003). When a sheriff acts as an arm of the state, as opposed to the county, then the sheriff is entitled to Eleventh Amendment immunity, and the county is not responsible for those actions. See Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).

Defendants contend that because Plaintiff's municipal liability claim is based on the Sheriff's duty to provide medical care in jail, and the duty to provide medical care in jail is a state—not a county—function, then Coffee County cannot be liable. Dkt. No. 21 at 1–6. Plaintiff, however, argues that Coffee County *can* be found liable for Sheriff Wooten's actions because a county

10

sheriff acts as an arm of the county, not the state, when providing medical care to inmates.  Dkt. No. 18 at 5–6.

In the Eleventh Circuit, courts use four factors to determine whether an entity is an "arm of the state" in carrying out a particular function:

> (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.

Manders, 338 F.3d at 1309 (citing Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm., 226 F.3d 1226, 1231–34 (11th Cir. 2000)).  The Eleventh Circuit applied this test in Lake v. Skelton, 840 F.3d 1334 (11th Cir. 2016), and held that a county sheriff operating a county jail acts as an arm of the state when providing food to inmates.  Id. at 1340–44.  Since then, Georgia district courts (including this one) have found that the holding in Lake necessitates a holding that a sheriff *also* acts as an arm of the state in providing medical care to inmates.  See, e.g., Jenkins v. Corizon Health Inc., No. CV418-099, 2020 WL 5492543, at *6 (S.D. Ga. Sept. 10, 2020) (Moore, J.); McRae v. Telfair Cnty., No. CV 318-077, 2020 WL 5608637, at *5–6 (S.D. Ga. Sept. 18, 2020) (Bowen, J.); Mizelle v. Wellpath LLC, No. CV 119-198, 2020 WL 3972339, at *2 (S.D. Ga. July 14, 2020) (Hall, J.); see also, e.g., Ravan v. Jackson, No. 5:19-CV-161 (TES), 2021 WL 1239831, at *6 (M.D. Ga. Feb. 2, 2021), report and recommendation adopted sub

11

nom. Ravan v. Talton, 2021 WL 1239830, at *6 (M.D. Ga. Feb. 25, 2021); Johnson v. Columbus Consol. Gov't, No. 4:19-CV-119 (CDL), 2020 WL 3472919, at *2 (M.D. Ga. June 25, 2020); Fincher v. Monroe Cnty. Bd. of Comm'rs, No. 5:18-CV-00424-TES, 2020 WL 1518625, at *13–14 (M.D. Ga. Mar. 30, 2020); Nesbitt v. Long, No. 519CV00067MTTCHW, 2019 WL 7842546, at *2 (M.D. Ga. Nov. 5, 2019), report and recommendation adopted, No. 5:19-CV-67 (MTT), 2020 WL 429490 (M.D. Ga. Jan. 28, 2020); Brooks v. Wilkinson Cnty., 393 F. Supp. 3d 1147, 1160 (M.D. Ga. 2019), appeal dismissed, No. 19-12211-JJ, 2019 WL 9051194 (11th Cir. Dec. 18, 2019); Palmer v. Correct Care Sols., LLC, 291 F. Supp. 3d 1357, 1362 (M.D. Ga. 2017).

The Court is similarly persuaded that it "can find no distinction for Eleventh Amendment purposes between a county sheriff feeding county detainees in a county jail and a county sheriff taking care of the medical needs of those same county detainees in that same county jail." Palmer, 291 F. Supp. 3d at 1362. The cases Plaintiff cites that came out differently predate Lake and cannot be squared with its holding. See, e.g., Lewis v. Whisenant, No. CV 515-77, 2016 WL 4223721 (S.D. Ga. Aug. 9, 2016) (decided in August 2016, while Lake was decided in October 2016); Green v. Glynn Cnty., No. CV201-52, 2006 WL 156873 (S.D. Ga. Jan. 19, 2006). Binding Eleventh Circuit precedent requires a finding that Sheriff Wooten acts as an arm of the state in providing

12

medical care to county inmates. See Palmer, 291 F. Supp. 3d at 1362; Lake, 840 F.3d at 1343. Accordingly, Coffee County cannot be held liable for those actions, and Defendants' motion to dismiss Plaintiff's claim against Coffee County must be **GRANTED.**

### III. Defendant Sheriff Wooten

Defendants argue that the claims against Sheriff Wooten should be dismissed because he is entitled to sovereign immunity, is not liable as a supervisor, and is entitled to qualified immunity.

#### A. Eleventh Amendment Immunity

For the same reasons Coffee County is not liable for Sheriff Wooten's actions in providing medical care to inmates, Sheriff Wooten is entitled to Eleventh Amendment immunity to Plaintiff's claims against him. See supra section II. Accordingly, Defendants' motion to dismiss all claims against Sheriff Wooten in his official capacity is **GRANTED.**

#### B. Supervisory Liability

What is left, then, is Count Four against Sheriff Wooten in his individual capacity. While "[i]t is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior," supervisors may be held "liable under § 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection

13

between actions of the supervising official and the alleged constitutional violation.'" Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). Such a necessary causal connection exists when:

> (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so"; (2) "a supervisor's custom or policy results in deliberate indifference to constitutional rights"; (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully"; or (4) facts support an inference that the supervisor "knew that the subordinates would act unlawfully and failed to stop them from doing so."

Powell v. Sheriff, 511 F. App'x 957, 961 (11th Cir. 2013) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360–61 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010)) (emphasis removed). "The standard for supervisory liability is 'extremely rigorous.'" Id. (quoting Cottone, 326 F.3d at 1360).

Defendants contend Plaintiff has not alleged any such causal connection between Sheriff Wooten's actions and the alleged constitutional violations. Specifically, Defendants argue Plaintiff has not alleged an official policy that resulted in constitutional violations; that Plaintiff fails to sufficiently allege a custom or "history of widespread abuse"; and that Plaintiff fails to plead an adequate claim for failure to train. Dkt. No. 12 at 11–15. Plaintiff, however, argues that his

14

complaint "adequately pleads both formal, written policies and informal customs that lead [sic] to constitutional violations," including a custom of excessive force and a custom of covering up and excusing uses of excessive force. Dkt. No. 18 at 10-11. Plaintiff also contends he adequately pleads facts showing a history of widespread abuse that put Sheriff Wooten on notice of the need to correct constitutional deprivations. Id. at 11-12.

As to Sheriff Wooten's supervisory liability related to use of excessive force,[6] Plaintiff's complaint falls woefully short of alleging such a custom, policy, practice, or procedure. Plaintiff alleges many conclusions related to such customs or policies, see dkt. no. 1 ¶¶ 147-59, but little-to-no factual support for these conclusions. The only allegation in the complaint that would support a finding that the Coffee County Sheriff's Office had a custom or widespread history of using excessive force is Plaintiff's recounting of a single incident in 2014 where a Sheriff's deputy accidentally shot a child. See id. ¶¶ 60-70. A single incident—which is not even clearly an instance of excessive force—that occurred six years prior to Plaintiff's alleged injuries does not establish a custom or policy of excessive force,

---

[6] The Court notes that the complaint does not contain a claim against Sheriff Wooten in his individual capacity for insufficient medical care in the county jail. Count Four alleges that Sheriff Wooten has supervisory liability in his individual capacity related only to excessive force; Count Five alleges that Coffee County and Sheriff Wooten are liable in their *official* capacities for medical care at the county jail. See Dkt. No. 1 ¶¶ 145-68.

15

nor does it constitute a history of widespread abuse that would put Sheriff Wooten on notice of the need to correct any alleged constitutional violations. See West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999))); Hawk v. Klaetsch, 522 F. App'x 733, 735 (11th Cir. 2013) ("fail[ing] to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse" which was necessary to hold police chief liable); Temple v. McIntosh Cnty., No. 2:18-CV-91, 2019 WL 287482, at *6 (S.D. Ga. Jan. 22, 2019) ("The Eleventh Circuit has explained that a 'custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law' and '[d]emonstrating a policy or custom requires show[ing] a persistent and wide-spread practice.'" (quoting Goebert v. Lee Cnty., 510 F. 3d 1312, 1332 (11th Cir. 2007))); Campbell v. Humphries, 353 F. App'x 334, 336 (11th Cir. 2009) (granting motion to dismiss supervisory liability claim because "one incident . . . is not enough to meet the rigorous standard for supervisory liability in this circuit").[7]

---

[7] Plaintiff also argued at the hearing on Defendants' motion that the County's alleged interference with Plaintiff's ability to file a complaint regarding this incident goes to supervisory liability. This argument is unavailing;

16

Plaintiff's complaint fails to allege facts sufficient to meet the "extremely rigorous" standard for supervisory liability. See Powell, 511 F. App'x at 961. Accordingly, Defendants' motion to dismiss Plaintiff's claims against Sheriff Wooten in his individual capacity must be **GRANTED**.

### C. Qualified Immunity

Because Plaintiff fails to state a claim for supervisory liability against Sheriff Wooten, a qualified immunity analysis is unnecessary.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, dkt. no. 12, is **GRANTED**. All of Plaintiff's claims against Defendants Coffee County and Doyle Wooten are hereby **DISMISSED with prejudice**. The Clerk is **DIRECTED** to terminate Coffee County and Doyle Wooten as defendants in this case.

**SO ORDERED**, this 26th day of July, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

anything the County did or failed to do *after* the alleged constitutional violations cannot establish a "causal connection between actions of the supervising official and the alleged constitutional violation." Keating, 598 F.3d at 762.

17